### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

JACQUELINE D. BERRY,          :
                                    :
             Plaintiff,          :
                                    :
        v.                    :      C.A.No. 06-217-GMS
                                    :
STATE OF DELAWARE,        :
DIVISION OF CHILD SUPPORT,   :
                                    :
            Defendant.      :

### DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant hereby moves to strike plaintiff's motion for summary judgment as it was served in violation of the Scheduling Order and has not been filed with the Court.   In support of this application, the following is shown:

1.       On March 31, 2006, plaintiff commenced this *pro se* action by filing a complaint. (D.I. 1) On August 1, 2006, plaintiff was permitted to amend her complaint and on August 4, 2006, defendant filed an answer to the amended complaint. (D.I. 7, 9)  On August 30, 2006, the Court entered a Scheduling Order. The scheduling order provided a deadline of May 2, 2007, for summary judgment motions. (D.I. 10)

2.       On May 2, 2007, defendant moved for summary judgment in accordance with the Scheduling Order. (D.I. 24, 25)  On May 30, 2007, defendant notified the Clerk's office that it was waiving its right to file a reply brief as plaintiff had not filed and served an answering brief. (D.I. 26)

3.     On June 5, 2007, the Court ordered the plaintiff to answer the defendant's motion for summary judgment within 10 days. (D.I. 27)  On June 20, 2007, defense counsel received documents entitled: Plaintiff's Motion for Summary Judgment, Plaintiff's Opening Brief In Support of Summary Judgment and a number of attached documents.  (Plaintiff's Motion and Opening Brief are attached)   The docket in this case does not reflect that these documents were filed with the Court.

4.     Paragraph 5 of the Court's Scheduling Order of August 30, 2006 provides: "All summary judgment motions, with accompanying briefs and affidavits, if any, shall be served and filed on or before May 2, 2007."  (D.I. 10) Plaintiff has not requested leave to file a summary judgment motion thereafter. Accordingly, plaintiff's motion for summary judgment is in violation of the Court's Scheduling Order and was not filed with the Court.  "While pro se litigants in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with Court orders.  When they flout that obligation, they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988).

For the above reasons, defendant requests that the Court strike plaintiff's motion for summary judgment served on counsel.

Respectfully submitted,

STATE OF DELAWARE
DEPARTMENT OF JUSTICE


/s/ Marc P. Niedzielski
Marc P. Niedzielski (#2616)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8324
Attorney for Defendant

DATED:  July 5, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JACQUELINE D. BERRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A.No. 06-217-GMS |
| | : | |
| STATE OF DELAWARE, | : | |
| DIVISION OF CHILD SUPPORT, | : | |
| | : | |
| Defendant. | : | |

## <u>O R D E R</u>

**IT IS SO ORDERED This _____ day of _____, 2007**

    that the defendant's motion to strike plaintiff's motion for summary judgment is

GRANTED and the Court shall not entertain such a motion from plaintiff.




_____
Chief Judge of the United States District Court

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE**

JACQUELINE D. BERRY,          :
                                      :

           Plaintiff,          :
                                        :

           v.                  :      C.A.No. 06-217-GMS
                                        :

STATE OF DELAWARE,           :
DIVISION OF CHILD SUPPORT,    :
                                        :

          Defendant.      :


**CERTIFICATE OF MAILING AND/OR DELIVERY**

      The undersigned certifies that on July 5, 2007, he caused the attached document

to be delivered to the following person postage prepaid via First Class Mail:


      NAME AND ADDRESS OF RECIPIENT(S):

      Jacqueline D. Berry
      20 Hickory Lane
      Dover, DE 19904

                        /s/ Marc P. Niedzielski
                        Marc P. Niedzielski, I.D. No. 2616
                        Deputy Attorney General
                        Carvel State Office Building
                        820 N. French Street, 6th Floor
                        Wilmington, DE  19801
                        (302)577-8400
                        Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JACQUELINE D. BERRY,                         :
                                             :
                    Plaintiff,               :
                                             :
        v.                                   :          C.A.No. 06-217-GMS
                                             :
STATE OF DELAWARE,                           :
DIVISION OF CHILD SUPPORT,                   :
                                             :
                    Defendant.               :

## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff hereby moves this Court to enter summary judgment in its favor

Pursuant to Rule 56, for the reasons set forth in its brief.


                                        Jacqueline D. Berry
                                        20 Hickory Lane
                                        Dover, DE 19904


DATED:  June 15, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JACQUELINE D. BERRY,          :
                              :

        Plaintiff,           :

                              :

     v.                      :       C.A.No. 06-217-GMS

                              :       *Jury Trial Demand*

STATE OF DELAWARE,          :

DIVISION OF CHILD SUPPORT,   :

                              :

        Defendant.      :

## <u>ORDER</u>

**IT IS SO ORDERED This_____day of _____, 2007**

that the Plaintiff's motion for summary judgment is GRANTED and

JUDGMENT is entered in its favor and against the Defendant.

ORAL ARGUMENT IS
REQUIRED

_____
       U.S.D.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JACQUELINE D. BERRY,                        :
                                            :
            Plaintiff,                      :
                                            :
      v.                                    :         C.A.No. 06-217-GMS
                                            :
STATE OF DELAWARE,                          :
DIVISION OF CHILD SUPPORT,                  :
                                            :
            Defendant.                      :

## CERTIFICATE OF MAILING AND/OR DELIVERY

The undersigned certifies that on June 15, 2007, she caused the attached

document to be delivered to the following person postage prepaid via First

Class Mail:

NAME AND ADDRESS OF RECIPIENTS(S):

/s/Marc P. Niedzielski                      Office of the Clerk
Marc P. Niedzielski, I.D. No.2616           United States District Court
Deputy Attorney General                     844 N. King St. Lockbox 8
Carvel State Office Building                 Wilmington, DE 19801-3570
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant

                                            Jacqueline Berry
                                            20 Hickory Lane
                                            Dover, DE 19904

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

JACQUELINE D. BERRY,                    :
                                        :
                Plaintiff,              :
                                        :
        v.                              :        C.A.No. 06-217-GMS
                                        :
STATE OF DELAWARE,                      :
DIVISION OF CHILD SUPPORT,              :
                                        :
                Defendant.              :

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF SUMMARY

## JUDGEMENT

Jacqueline D. Berry
20 Hickory Lane
Dover, DE 19904
(302) 399-8613
(302) 697-9120

DATED: June 11, 2007

## **TABLE OF CONTENTS**

Nature and Stage of Proceedings ...............................................

Summary of the Argument ....................................................

Statement of the Facts .......................................................

## ARGUMENT I.

Plaintiff is entitled to Summary Judgment on Plaintiff's claim under the ADA, as the Eleventh Amendment to the Constitution does not bar the claims..................................................................

## ARGUMENT II

Plaintiff has established a Prima Case of Discrimination and Retaliation under Title VII and the Fair Pay Act..............................................

Conclusion .................................................................

## NATURE AND STAGE OF THE PROCEEDINGS

On January 12, 2005, Plaintiff filed a complaint charge of discrimination issued against the State of Delaware Division of Child Support with the Equal Employment Opportunity Commission Philadelphia District office, Charge # 170-2005-00401. Exhibit # 1.

On August 11, 2005, Plaintiff attended a mediation session with Defendant, Delaware Division of Child Support. Such parties reached no agreement or settlement. Exhibit # 2.

On January 2, 2006, Plaintiff received Dismissal and Notice of Rights from Equal Employment Opportunity Commission Philadelphia District Office. Exhibit # 3.

On March 30, 2006, Plaintiff commenced this prose action by filing a complaint with the Office of the Clerk United States District Court Wilmington, Delaware.

On May 12, 2006, a summons was issued against the State of Delaware Division of Child Support.

On August 1, 2006, Plaintiff was granted by the United States District Court to amend her complaint.

On August 30, 2006, the court entered a scheduling order.

On September 5, 2006, Defendant filed and served interrogatories and request for production, plaintiff filed a response.

On October 30, 2006, Plaintiff requested an extension of time from the court to answer defendants' discovery, as Plaintiff never received a response to request of extension.

On January 17, 2007, defense counsel for defendant wrote to Plaintiff regarding the outstanding discovery.

On February 28, 2007, Plaintiff was deposed.

On March 9, 2007 defendant moved for extension of discovery and to convene a telephone conference.

On May 2, 2007, Defendant moved for Summary Judgment.

On May 30, 2007, Defendant waived its right to file a reply brief on its

pending motion for Summary Judgment from Plaintiff.

On June 7, 2007, Plaintiff received notice from United States District Court

ordering Plaintiff to file a response to Defendants Summary of Judgment by

June 15, 2007, and this is its opening brief.

# SUMMARY OF THE ARGUMENT

## I.

Plaintiff's claim under the ADA are not barred by the Eleventh Amendment

Of the United States Constitution which divests the court of Jurisdiction of

lawsuits by citizens against a state.

## II.

Plaintiff states a legal claim for racial discrimination and retaliation under

Title VII, the record is of sufficient evidence and the matter should be

scheduled to go forward.

# STATEMENT OF THE FACTS

Plaintiff commenced employment with the State of Delaware in 1977 and was employed in a number of different positions, during the period 1977 until 2005; Plaintiff was continuously employed with the State for 11 years, 1 month, and 15 days.

On October 16, 2000, Plaintiff started her employment with the Division of Child Support Enforcement as a Child Support Specialist I, and was placed into the Customer Service Unit. Plaintiff was informed by Diane Walters that this was a new unit and there was a need for employees in such department. Plaintiff was also informed by Mrs. Walters, one of the Supervisors of the Customer Service Unit, that all employees of such job title are qualified to be transferred to other units or counties throughout the agency if positions become available and you must meet the requirements and have the experience due to the fact of the career ladder that was currently being implemented with the Division of Child Support Enforcement.  I was also informed by Mrs. Walters that because of the career ladder that every employee hired by the Division of Child Support Enforcement had to be hired as a pay grade 10 as I had made a request verbally to Mrs. Walters upon being made the offer of Child Support

Specialist I with the Division of Child Support and my acceptance of such

position to maintain my current salary of pay grade 11 currently with the

Division of Mental Retardation, but my request was denied as Mrs. Walters

stating on my first day of employment with Child Support that everyone is

hired as a pay grade 10 because of the career ladder being in effect, as well

stating that no one hired after the implementation of the career ladder would

be promoted until the former employees of the Division of Child Support

would be provided with required trainings and requirements to meet the next

step level with the career ladder. I, Plaintiff, was provided with false

information as to the career ladder and pay grade by the Defendant as

several white employees were hired above the pay grade 10 as stated by

Mrs. Walters upon my time of hire, would not happen as a new employee of

hire with the Division of Child Support. Several white employees were

promoted within the career ladder without meeting the necessary

requirements and training as well having the knowledge and hands on

experience, which is stated in the career ladder for promotion to the next

step. White employees Lynn Galaway, Tammy Halter, Paul Brunoski, and

Elaine Daniels were employees in the Customer Service Unit supervised by

Diane Walters and Brenda Annand who were transferred to other units with

the Division of Child Support. Debra Parrish (Flora), Jannie Webber, Bill

Dekkenison are all white employees who were hired as Child Support

Specialists II above the pay grade 10. They were hired by the Division of

Child Support as pay grade 11, and white employees in the customer service

unit which is supervised by Diane Walters and Brenda Annand who were

promoted within the career ladder without having the necessary trainings or

experience were Sandi Rossi, Katherine Pietruczenia, Elizabeth Price

(Ondroff) as these employees were promised by Brenda Annand to be the

next in line for the career ladder and not having the knowledge and

experience or the necessary training were selected by Brenda Annand to sit

for the career ladder testing, as "persons of color" seem to struggle and get

"rejected' after putting in an application after application, year after year, to

the next higher promotion level of pay grade 11 or pay grade 13. Every

white employee supervised under Brenda Annand in the customer service

unit in which I worked have been promoted to pay grade 11 or pay grade 13

who were hired after myself, as well others were transferred.

In April 2002, Plaintiff applied and was given the opportunity to be

interviewed for a position of Child Support and was selected as an eligible

candidate to accept an offer for the position of Child Support Specialist I in

Georgetown, Delaware, Division of Child Support office. Exhibit #5.

Plaintiff transferred to such position allowing opportunity to no longer be

supervised by Brenda Annand and as well to obtain experience of court mediation process as this was stated to my by Lennie Warren on May 9, 2001 when I personally met with her that this was all I needed to advance within the newly implemented career ladder. As my personal experience of the mediation process was not acceptable on my application submitted for the career ladder promotion on January 18, 2001. Exhibit #6.

On August 2, 2002, Plaintiff accepted offer to return back to the customer service unit in New Castle County Division of Child Support Enforcement as a Child Support Specialist I. As Plaintiff interviewed for such position and only accepted this position because her daughter was sick and was being treated by a specialist for such illness at the A. I. Dupont Hospital for Children in Wilmington, Delaware. The current child support office that Plaintiff worked out of was approximately 1 ½ to 2 hours away in regard to traveling to get Plaintiff's daughter to such scheduled appointments. March 31, 2004, Plaintiff given performance review by Brenda Annand placed on corrected action plan, performance review contained negative comments.

In June 2004, Plaintiff went out of work due to Worker's Compensation injury of bilateral carpel tunnel syndrome, and female problems was not a result of Plaintiff being out of work as Defendant has stated.

On November 8, 2004, Plaintiff was allowed to return to work by Defendant. Plaintiff's treating doctor released Plaintiff to return to full duty with work restrictions of no repetitive use of hands.

On January 12, 2005, Plaintiff filed a charge of Discrimination with the Delaware Department with the Delaware Department of Labor. Due to notice of Dismissal and Rights receive from Delaware Department of Labor Philadelphia District Office.

In June 2005, Defendant to comply with work restrictions of Plaintiff's treating physician related to Worker's Compensation injury and provided an alternative duty assignment for two months in the tax intercept unit.

In June 2005 Plaintiff was denied to return to work by Defendant with restrictions and applied for long term disability with the State which was denied due to results of a functional capacity evaluation as requested by Plaintiff's treating physician.

On August 22, 2005 Plaintiff called Department of Health and Human Services and spoke with Latanya Warren inquiring process to repay monies that was started. I was overpaid as a result of a long-term disability claim being denied as well informing Ms. Warren that Plaintiff would not be returning to Delaware Division of Child Support as Plaintiff had been offered employment in another state.

On November 17, 2005, Plaintiff received notice of dismissal/termination from Defendant. During Plaintiff's employment with Division of Child Support Enforcement, Plaintiff missed time from work due to Worker's Compensation injury and Family Medical Leave related to Plaintiff's illness as well as Plaintiff's daughter's illness.

Plaintiff was subject to working in a hostile work environment, harassment, and retaliation by supervisor Brenda Annand during employment with Division of Child Support Enforcement.

# ARGUMENT I

Defendant is not entitled to Summary Judgment on Plaintiff's claims under
the ADA, as the Eleventh Amendment to the Constitution does not bar the
claims.

## INTRODUCTION:

Summary Judgment is appropriate when the "pleading", depositions,
answers to interrogatories, and admissions on file, together with affidavits,
show that there is genuine issue as to any material fact and that the Plaintiff
is entitled to a Judgment as a matter of law.

(See Exhibits)

# DEFENDANTS VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 RACE DISCRIMINATION AND FAILURE TO PROMOTE

## Facts

Plaintiff commenced employment with Defendant DCSE in October 2000 serving as a Child support Specialist I in the customer service unit ("CSU") until Plaintiff was dismissed by Defendant effective November 17, 2005. Plaintiff is of African American background.

Beginning in approximately September of 2001, Plaintiff was supervised by Brenda Annand, a Caucasian female. Mrs. Annand is responsible for cultivating and maintains a workplace environment in the csu that is hostile as well displaying different terms and conditions in similar employment to non-Caucasian employees. Among the non-Caucasian employees who were mistreated in the workplace were Calvin Parsons, Nancy Santana, Robin Johnson, Plaintiff and others. On numerous occasions over a period of years, Ms. Annand engaged in verbal abuse directed at Plaintiff, including loud shouting and derogatory language perpetrated in front of Plaintiff's colleagues. On or about March 2005, Plaintiff was subpoenaed to testify about Ms. Annand's behavior in a hearing before the Industrial Accident Board of the state of Delaware relating to a claim brought by Plaintiff's

fellow employee and non-Caucasian Calvin Parsons, Ms. Annand was fully

knowledgeable of Plaintiff's need to appear as a witness.  On

March 31, 2004, Plaintiff received a performance review given by Brenda

Annand which contained negative comments regarding Plaintiff's

performance, written complaints were unjustified due that ere not supported

by a recorded call, as all calls taken in the CSU are monitored and recorded

by Ms. Annand.  Plaintiff's application for the career ladder submitted April

1, 2004 was denied for the second time since employment began in October

2000. I have submitted my application twice and have been denied.

   I am requesting that the Division of Child Support (State of Delaware) be

investigated for alleged discrimination of "employees of color" in the

promotional standards set by the Division of Child Support career ladder

promotion criteria which was used to promote some white employees, within

child support, but also used against "persons of color" to deny promotions to

the next level (Pay grade 11 or Pay grade 13) in the career ladder process

especially in the customer service unit which I worked for back in the Year

2000.  The career ladder promotion criteria had been put into existence, in

the Year 2000, with the Division of Child Support (State of Delaware).

   The career ladder promotion criteria had been put into place in the Year

2000 by the Division of Child Support (State of Delaware) State Personnel

Department for division of child support employees to apply for future child support promotions if their written applications were approved by state personnel plus also given a <u>favorable</u> rating by an employee's current supervisor. After approval from state personnel and the employee's current supervisor, the child support worker can then take a written test for promotion to either Pay grade 11 or Pay grade 13. The career ladder promotion criteria expressly states that a lot of <u>prior</u> work knowledge and /or previous or present work experience "<u>must</u>" be acquired and "<u>met</u>" to be upgraded to the next higher promotions to Pay grade 11 and Pay grade 13 respectively.

I have applied on two (2) different occasions since the Year 2000 to elevate to the Pay grade 11 (Child Support Specialist II) promotion level, but my application was always denied for 'numerous reasons' with State Personnel (Division of Child Support), but other white employees (who were employed after I was hired with the Division of Child Support in October 2000) had applications what mysteriously "met" the guidelines of the career ladder for promotions to Pay grade 11 or Pay grade 13. Now, every white employee in customer service unit, in which I work, have been promoted to Pay grade 11 and it was alleged that some **did not** meet the "criteria" to event to be promoted to Pay grade 11 such as documented and/or "proven"

case management experience/child support work history and other prior

"related" work experience that had to be documented for meeting promotion

requirements to the next higher grades of Pay grade 11 or Pay grade 13.

From knowing and talking to these white customer service co-workers, their

previous work histories and child support knowledge/work history did not

indicate any previous or current child support knowledge or child support

work experiences/case management background conclusive enough to earn

their recent promotions to Pay grade 11. These white employees, in the

customer service unit, had questionable or no prior case work experience or

other necessary previous work knowledge/work history to even qualify to

submit an application for Pay grade 11 promotions.

It was alleged that customer service personnel, along with other white

personnel within the other departments in the division of child support, had

lied or altered their applications and that their promotions were handed to

them without their applications being meticulously screened to verify if

work history/work knowledge credentials were accurate or truthful.

Other child support "persons of color", who submitted applications to

Pay grade 11 or Pay grade 13 were told, just like me, that somehow their

applications did not "prove" any case management experience or other

necessary previous child support work experience or work knowledge, but

other white coworkers who were promoted did not have any prior or

"proven" work history/knowledge to meet the "stringent" work experience

and /or work  knowledge career ladder promotion criteria, but somehow

**white employees were mysteriously upgraded** to Pay grade 11 and/or Pay

grade 13 quicker than" employees of color"  who had the same time working

in the same position, salary and work credentials as their white co-workers.

A lot of other "employees of color" at the Division of Child Support

(state of Delaware) have also discussed situations where other were

promoted, **within other units at child support, who did not meet the**

**"previous work experience or prior work knowledge/experience"**

**needed for promotions to the next higher grades of Pay grade 11 or Pay**

**grade 13.** It was rumored that white personnel were told what to put on

their applications, by their current supervisors, to make them "qualify" for

advancement.

**White employees seem to be promoted with "ease", while "persons of**

**color" seem to struggle and get "rejected" after putting in application**

**after application, year after year, to the next higher promotion level of**

**Pay grade 11 or Pay grade 13.**  Be advised that the Pay grade 13 is the

highest promotion you can reach under the "career ladder" promotional

criteria put together back in the Year 2000 so that division of child support

employees, like myself, can take a written test after their written application

for promotion was approved and accepted not only by state personnel, but

also an endorsement given by their current supervisors, for divisions of child

support employees to then be able to take a "career ladder" test to be

promoted to the Pay grade 11 or Pay grade 13 slots.

Also division of child support employees "persons of color" had received

negative performance reviews as their supervisors knew that if they got a

negative yearly performance reviews, than an 'employee of color" could not

take the written test if their current supervisor had given a "person of color"

a "needs improvement" rating on their yearly performance review. In Year

2004 and 2005 my supervisor, Ms. Brenda Annand, gave me a "needs

improvement" rating on my evaluation as she knew that this could "stop" me

from getting promoted to Pay grade 11, but since that time, I had been

mysteriously denied an upgrade due to **numerous problems with my**

**written application with the state Personnel (division of Child Support).**

If any Division of Child Support (State of Delaware) child support worker

was given a "needs improvement" on their yearly performance review, that

stopped them from even submitting an application for Pay grade 11 or Pay

grade 13 promotions.  But since Year 2000, I could never get my "written

application" approved by State Personnel to even be given the opportunity to

"test" for the Pay grade 11 or Pay grade 13 upgrades. My written application was "denied" again and again with State Personnel, Division of Child Support.

White employees, within the Division of Child Support, do not seem, to have any problems with their applications as it was alleged that some supervisors helped them fill out their applications and told them how the application should be "worded" in order for their application to meet with state personnel approval. Diane Walters in Year 2000 was witness by Plaintiff as doing this with an employee in CSU. In the Year 2000, Division of Child support personnel were given "instant" promotions to either Pay grade 11 or Pay grade 13 if their current supervisors gave them a "meets expectations" on the yearly performance review. After the Year 2000, it was then required that Division of Child support employees still be given a "meets expectations" on their yearly performance review, but also meet approval by their current supervisor to submit an application for the next higher pay grade which was either Pay grade 11 or Pay grade 13. In late 2000, child support employees were then mandated to take a "written test" to be upgraded to the Pay grade 11 or Pay grade 13 pay grades.

Since the career ladder promotion criteria started in the Year 2000, division of child support, "employees of color", were discriminated against

for future promotions. "persons of color" were given a very hard time in trying to get to the next promotional level while "white employees" seem to mysteriously get upgraded to the next higher level with **questionable** work histories and/or **"unproven"** or **"fraudulent"** **past or present work experience/knowledge.**

**REMEDY I AM SEEKING..........**

I want the Federal District Court to be given all access to **all** current child support employees **personnel records** who were given promotions to either Pay grade 11 or Pay grade 13, now and in the past, to see if their written child support applications actually **"met"** the promotion criteria and if their "work experience and previous work knowledge" **can be honestly reviewed and documented, by an independent federal agency, to see if these co-workers actually have the "required" work history/knowledge needed to advance to the next higher promotional level of Pay grade 11 and Pay grade 13.**

In my opinion, the career ladder criteria discriminate against "persons of color", but encourage promotions of white personnel. The career ladder promotional system is currently unfair and questionable as it has been used purposely to deny promotions to "persons of color" year after year. "Employees of color" were also denied promotions because of questionable

practices by state personnel and by current pr past supervisors who wanted white personnel to advance, but also stop or discourage certain "persons of color" subordinate employees from seeking or "meeting" future promotion "credentials" by not allowing "persons of colors" necessary training classes to be given the educational qualifications to test to the next higher pay grade.

Employees of non-caucasian are subject to unlawful harassment and intentional discrimination in the workplace by DCSE. White employees seem to be put first in seating or being selected, by their supervisor, to take child support training classes required to be elevated t Pay grade 11 or Pay grade 13 slots while "persons of color" were last to acquire a seat in a child support training lass or told that another co-worker was taking the class first and they would have to wait until a future training class was scheduled, in the future, in order to "compete" for a sear again. Unfortunately, future child support trainings were not scheduled in the future or no indication was given when the next training class would be offered for "persons of color" to be given seat for the next scheduled training class which was highly unfair!

It is my request that all child support applications, from Year 2000 through Year 2005, be **independently screened, by a Federal agency,** if promoted child support white co-workers did meet the stringent "criteria"

mandated to the next higher grade as outlined in the career ladder with the
Division of Child Support (State of Delaware).

Also, **all** child support applications, of current employees promoted
through the career ladder promotion process, be checked with prior
employers to see if child support co-workers had "proven" and documented
prior or present work histories clearly proving that they had "fully met" the
"required" work experience, training and work knowledge that was listed in
their written applications needed in order to be promoted to the next higher
Pay rage 11 or Pay grade 13 within the Division of Child Support (State of
Delaware).

CONCLUSION:

I would like an independent Federal panel to talk individually with all
"persons of color" to disclose additional discriminatory practices, within the
division of child support, without fear of retaliation or reprisal by
management and /or present supervisors.  A lot of other discriminatory
practices can be disclosed if "persons of color" would be given a
"guarantee" of complete privacy  and "non disclosure" of an employee's
name or leakage of their personal/confidential information to state personnel
or any reason other than for disciplinary actions against the State of

Delaware (Division of Child Support) management and or/supervisory personnel.

Confidentiality needs to be strictly adhered to so that current employees verbal admissions of alleged discrimination can be made to an independent Federal agency of discriminatory practices still ongoing within the Division of Child support (State of Delaware).

**If work discriminations found within the child support agency, then management as well as discriminatory supervisors need to either be severely disciplined, terminated or downgraded to subordinate position s that make them "incapable" of hurting current and future division of child support employees striving for a "fair" promotion within the Division of Child support (State of Delaware)**

For the above abuse reasons the Plaintiff is entitled to judgment as a matter of the law as to Defendants violation of failure to promote and race discrimination under the Title VII of the Civil Rights Act of 1964 Race Discrimination and Failure to Promote.

# DEFENDANTS VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993

## Facts

On October 22, 2003, Plaintiff received a fax at work, DCSE CSU unit from Plaintiff's daughter's treating physician requesting Plaintiff to be moved to a closer employment job site in order for Plaintiff to support medical management treatment plan due to the nature and severity of Plaintiff's daughter's current illness. Exhibit_____.

On December 31, 2003, Plaintiff received a telephone call from Plaintiff's daughter's treating physician requesting for Plaintiff's daughter to be treated and seen by a specialist for medical concern/disability on January 2, 2003, due to recent testing results. Exhibit_____.

Plaintiff made a request to Brenda Annand (Supervisor) of need to take daughter to such requested appointment due to the severity of Plaintiff's daughter's illness. Plaintiff's request for vacation full day off and suggested for Plaintiff's daughter's treating physician to be scheduled to a different time as quoted as well demanding to have such appointment scheduled to another day a week later

Exhibit _____.

Plaintiff was denied the requested time off to take her daughter to scheduled doctors appointment as well Plaintiff was threatened by Ms. Annand if such time requested off was used was subject to not being approved by her.

On January 2, 2003, Plaintiff took her daughter to the doctor as instructed by treating physician; Plaintiff's daughter had to receive emergency medical treatment at Bayhealth Hospital Medical Center. Exhibit _____

Upon return to work, January 5, 2005, Ms. Annand was hostile and rudely attacked Plaintiff verbally as Plaintiff turned in leave slip stating Plaintiff's absences negatively impacted the unit as well informing Plaintiff that her performance review would be affected by such absences.

On January 2, 2004, February 10, 2004, March 8, 2005, same request was repeated and made by Plaintiff's daughter's doctor for Plaintiff to be moved closer to home (Kent County Office) in order to care and support the recommended treatment plan as well documents stated Plaintiff's daughter's medical condition had worsened as a result of Defendant not complying to accommodate Plaintiff to a closer employment site to care and support treatment plan for daughter.

On February 17, 2004, Plaintiff requested in writing from her supervisor Brenda Annand as to reasons why DCSE could not accommodate Plaintiff's

daughter's request to be transferred to a closer employment site to care and support the recommended treatment plan. Ms. Annand replied via e-mail to Plaintiff that Plaintiff was hired to be a Child Support Specialist I (CSSI) in the customer service unit which is located in New Castle County, (Plaintiff lives in Kent County) as well stating there are no (CSSI) vacancies in Kent County and ended by stating if vacancies become available for Plaintiff to follow normal procedure and apply for it.

This e-mail was forwarded to Diane Walters who is Brenda Annand's supervisor and Guy Perrotti, Deputy Director of the Division of Child Support Enforcement by Brenda Annand.

On February 24, 2004, Plaintiff met with Latonya Warren HR Specialist DSSH and Alice Bailey HR Tech (DHSS) to discuss concern of the need to process to be transferred to the Kent County DCSE office, as well concerns regarding harassment by Brenda Annand upon return to work when using (FMLA) leave for myself and my daughter, concern of salary demotion upon transfer from Sussex County DCSE back to New Castle DCSE and situation of the current hostile work environment encountered by Brenda Annand to employees of color.

On March 24, 2004, Plaintiff's daughter's doctor again wrote another request of same nature as in the past for Plaintiff to be moved closer to home

(DCSE Kent County office) in order to care and support the recommend Ted treatment plan. Such request at this time was sent and personally addressed to Charles Hayward, Director of the Division of Child Support Enforcement and to Vincent Meconi, Office of the Secretary of the State of Delaware Exhibit_____. This memo was withheld from (EEOC, PA office) investigation.

On April 7, 2004, Plaintiff received e-mail from Diane Walters informing Plaintiff that Chuck Hayward was in receipt of doctor's letter requesting for Plaintiff to work from the Kent County office, per memo sent by Plaintiff's daughter's doctor on March 24, 2004. Memo requested Plaintiff to meet with Dianne Walters and Brenda Annand to discuss the request made by Plaintiff's daughter treating physician.

On April 12, 2004, Plaintiff met with Diane Walters and Brenda Annand, Supervisor in CSU DCSE, to discuss and address concern of need for Plaintiff to transfer to the Kent County office of Child Support, response from Defendant was that Plaintiff was hired to position of Child Support Specialist in the Customer Service Unit which is housed in the New Castle County Office, informing Plaintiff of no current vacancies in the Kent County Office of Child Support and recommending for Plaintiff to seek positions in Kent County and apply for them.

Plaintiff knew Defendant was providing baseless excuses for not wanting to honor or comply with Plaintiff's daughter's request due to the fact on October 22, 2003 when Brenda Annand was informed of the need for Plaintiff to be transferred to Kent County DCSE, she responded by stating to Plaintiff this was not going to happen and failed to pursue the appropriate procedures in assisting Plaintiff's need and physicians request as well, Ms. Annand repeatedly threatened Plaintiff when using FMLA for her daughter or herself as stating it was going to affect Plaintiff's performance reviews of excessive missing time from work to care for her daughter and support recommended treatment plans. Defendant DCSE had two available vacancies that Plaintiff was not aware of or informed of by DCSE in the Kent County Division of Child Support Office due such positions were not posted allowing Plaintiff opportunity to apply for such positions.

On or about November 2003, Debbie Flora Parrish (white) was transferred to the Kent County Office of the Division of Child Support as this position was made for her in the UIFSA Unit as a Child Support Specialist II as Ms. Parrish was hired as a Specialist II and in acceptance of Plaintiff's position with DCSE, Plaintiff was informed by Diane Walters that due to the career ladder that every employee hired would have to be at Pay Grade 10 of Child Support Specialist I, as this was not the case with Debra

supervisor Brenda Annand DCSE by refusing Plaintiff leave request related

to requested appointments for treatment of Plaintiff's ill daughter and

threatened Plaintiff upon return from such appointments that it would affect

Plaintiff's performance reviews. Plaintiff's need to be transferred to the Kent

County Office Division of Child Support would not have caused an undue

hardship on Defendant DCSE. Usage of FMLA was factored into decisions

regarding promotions, disciplinary matters, and loss of health benefit

coverage. Plaintiff was subject to purposeful unequal treatment, outright

intentional exclusion, benefit loss, stereotypic assumptions, overprotective

rules and policies, failure to comply and intentionally not accommodating

request for a job transfer.

   For the above reasons, the Plaintiff is entitled to judgment for

Defendant's violation of the Family and Medical Leave Act of 1993.

## DEFENDANTS VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ["ADA"]

### Facts of Plaintiff's Complaint

On May 26, 2004, Plaintiff was diagnosed with Bi-lateral Carpel Tunnel Syndrome. (Berry Tr. pg.18, 60, 61, 62, 65, 66, 98, 101, 114, 116.) Exhibit _____

On June 23, 2004, Plaintiff effective out on Worker's Compensation due to order and request of employer. (Berry Tr. Pg. 10, 18, 60, 61, 62, 65, 66, 98, 101, 114, 116.) Exhibit _____

June 23, 2004, Plaintiff made request to Defendant to modify duties on June 23, 2004. Plaintiff was denied supplemental short-term disability as a result informing of attorney presentation to Alice Bailey HR Tech, DHSS, Plaintiff was ordered to immediately get off state property.  Ms. Barley stated agency would no longer discuss concerns related to Worker's Compensation injury with Plaintiff.  (Berry, Tr. Pg. 10, 60, 61, 62, 65, 66, 98, 101, 114, 116)  Exhibit _____

In 2005 Plaintiff applied for long-term disability but it was denied. (Berry tr. pg. 62-63, 10, 60)

On June 22, 2004, Plaintiff received doctors' certificate to return to work full duty with limitations of no repetitive use of hands.   Exhibit _____

On June 23, 2004, Plaintiff requested to meet and discuss surgery schedule and options available within DCSE Customer Service Unit to have job duties modified in order to maintain full-time employment with DCSE, I addressed concerns with Brenda Annand, CSU Supervisor.

Exhibit_____

July 20, 2004, Plaintiff received notice of FMLA leave exhaust effective August 9, 2004 as well inquiring of OB-GYN surgery to be scheduled August 2, 2004. Plaintiff had not released any documents or information to DCSE or Brenda Annand of such related surgery as this was suddenly recommended in July 6, 2004 by Plaintiff treating physician as well Plaintiff was out of work due to Worker's Compensation injury and no contact had been made to DCSE per request of Alice Bailey to Plaintiff of no further discussions through Plaintiff in reference to being informed of legal representative. (Berry Tr. pg. 10, 18, 60, 61, 62, 65, 66, 98, 101, 114, 116.)

Exhibit _____

On October 22, 2004, Plaintiff was sent notice by DCSE recommending dismissal, which notice included false statement of being informed of medical certification for OB-GYN surgery. This medical condition was FMLA related to Plaintiff, as well extending opportunity for a pre-decision meeting allowing concerns to be addressed of Plaintiff's return to work with

CSE, as Plaintiff continue to remain out of work due to DCSE employer

failing to accommodate Plaintiff's disability-related to Worker's

Compensation injury of Bi-lateral Carpel Tunnel. (Berry Tr. pg. 18, 23, 59,

60, 61, 62, 65, 66, 98, 101, 114, 116.)  Exhibit _____

On November 19, 2004, Predecision meeting held with Plaintiff, Midge

Holland, Brenda Annand. At this meeting Plaintiff requested Supervisor

Brenda Annand to produce document she states she had received from

Plaintiff related to scheduled OB-Gyn surgery August 2, 2004. What Mrs.

Annand produced as evidence of her false statement was a medical

certificate for intended scheduled surgery of date June 28, 2004, Plaintiff

obtained copy of document at pre-decision hearing. Exhibit _____

On November 29, 2004, allowed to return to work full duty per release of

physician and DCSE. Exhibit _____

January 7, 2005, back out of work due to modification of doctor's

certificate including limitations.   Exhibit_____

February 7, 2005, allowed returning to work per release of treating

physician this time to full duty with no work related limitations.

Exhibit_____

March 7, 2005, first modified duty assignment extended to Plaintiff adhering

to treating physician repeated request of no repetitive use of hands by DCSE,

as this assignment was in the accounting unit.

May 2005, Job change recommended by Dr. Varappia.

June 2005 Back out again from work Worker's Compensation related due

to modification of disability certificate DCSE could not accommodate

restrictions of no repetitive use of hands and a repeated recommendation of

job change by treating physicians Dr. Crain and Dr. Varappia.

June 2005 Dismissal recommended again DCSE, as employer would not

accommodate disability restrictions.

August 15, 2005 Plaintiff contacted Latonya Warren, DHHS HR

Specialist and informed of not returning to DCSE as Plaintiff had accepted

employment in North Carolina Division of Child Support offering a position

that would accommodate disability limitations. DCSE legal rep for Plaintiff

Worker's Compensation injury was notice of request of no return by

Plaintiff's attorney.

October 7, 2005 DCSE requesting Plaintiff to return to work.

November 17,2005 DCSE sent notice of dismissal to Plaintiff signed by

Vincent P. Meconi, Secretary of the State of Delaware, as Plaintiff was then

fully knowledgeable that verbal resignation was not official or was not

accepted by DCSE/DHHS position of Child Support Specialist I to Latonya Warren HR Specialist, DHHS.

Defendant repeatedly would not comply with treating physician request of a job change for Plaintiff and would not accommodate Plaintiff and would not accommodate Plaintiff's limitations in reference to disability of Bi-lateral Carpel Tunnel Syndrome allowing Plaintiff to work full-duty and maintain her employment with the State of Delaware, Plaintiff had made request to HR DHHS for assistance of seeking available employment to accommodate limitations, but was denied. (Berry Tr. Pg. 19, 20, 21, 24). Exhibit_____

Plaintiff was dismissed effective November 17, 2005 by DCSE. Plaintiff was wrongfully discharged. Exhibit _____

Plaintiff since then has been diagnosed with bi-lateral carpal tunnel syndrome by July 18, 2006 and has been referred to Vocational Rehabilitation by treating physician Dr. Crain. Exhibit _____

CONCLUSION:

Defendant failed to provide provision of a reasonable accommodation pursuant to Section 102 (b45) of the Americans with Disabilities Act of 1990 (ADA). Defendant refused to identify and make a reasonable accommodation to Plaintiff that would provide Plaintiff with an equally

effective opportunity and would not cause an undue hardship on the operation of the business. Defendant did not provide reasonable accommodation and good faith effort to Plaintiff's disability. Defendant denied a job to Plaintiff due to disability limitations related to Bi-lateral Carpal Tunnel Syndrome where performance could have been accomplished by reasonable accommodation. Plaintiff was subject to purposeful unequal treatment, outright intentional exclusion, overprotective rules and policies, failure to make modifications to existing practices, exclusionary qualifications standards and criteria regulation to activities, benefits, jobs, and other opportunities. Defendant's stereotypic assumptions not truly indicative of the Plaintiff's ability. Supervisors and managers were informed regarding necessary restrictions on the work and duties of the Plaintiff and necessary accommodations. Defendant failed to assure equality of opportunity to Plaintiff and full participation. Plaintiff was subject to unfair and unnecessary discrimination. Exhibit_____.

Accordingly, Congress does have authority to subject Delaware to the ADA and Plaintiff is entitled to judgment in its favor. For the same reason all of Plaintiff's claims under 42 U.S.C. § 12203 (Retaliation under the ADA) are not barred by the Eleventh Amendment immunity.